IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MARISSA TORRES, Individually and On Behalf of All Similarly Situated Persons,<br>　　Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 5:20-cv-0212 |
| CHAMBERS PROTECTIVE SERVICES, INC., JOHN CHAMBERS, CHRISTINA CHAMBERS, JAMES CHAMBERS, AMBER CHAMBERS ARRIAGA, and ALLEN CHAMBERS,<br>　　Defendants. | § | JURY DEMANDED |

**BRIEF IN SUPPORT OF MOTION TO AUTHORIZE
NOTICE TO SIMILARLY SITUATED WORKERS**

　　Plaintiff Marissa Torres ("Torres" or "Plaintiff"), submits this Brief in Support of her Motion to Authorize Notice to Similarly Situated Workers:

**I. INTRODUCTION**

　　1.　Plaintiff has moved for notice to be sent to similarly situated individuals who worked for Defendant as gate guards or gate attendants, were misclassified as independent contractors, and were not paid overtime pay as required by the Fair Labor Standards Act ("FLSA"). In support of the Motion, Plaintiff submits this brief, along with her own declaration, declarations from two other former workers, discovery responses and documents produced by the Defendant, and other documents to demonstrate that a similarly situated group of workers exists. These similarly situated workers should be notified of this action and of their right to participate if they so desire. Defendant asserts that plaintiff and other gate guards/attendants were independent contractors; these individuals are also similarly situated to the Plaintiff with regard to the ultimate determination as to whether they were employees or independent contractors (the

1

factors of the "economic realities test").

2. Quick and clear notice to these individuals is necessary because under the FLSA, individual Plaintiffs must "opt-in" in order to join a "collective action." 29 U.S.C. § 216(b). Thus, until a particular individual is notified of and consents to join a collective action, the statute of limitations continues to run for that individual. Given the short two-year time period allowed for back wages under the FLSA, time is of the essence when attempting to find and notify potential Plaintiffs in collective actions. 29 U.S.C. § 255.

3. On January 12, 2021, a panel for the Fifth Circuit handed down a decision in *Swales v. KLLM Transp. Servs., L.L.C.*, No. 19-60847, 2021 WL 98229, that rejected the formerly wide-spread use of the *Lusardi* conditional certification scheme in collective action cases such as this case. While *Swales* stands for the proposition that the Court should not conduct the two-step certification process which was previously followed by many courts in this district, it did not alter the statutory mandate that employees are permitted to bring an action for violation of the FLSA in behalf of themselves and "other employees similarly situated." 29 U.S.C.§216(b).

4. The FLSA requires payment of overtime compensation to all non-exempt employees when they work in excess of forty (40) hours in one week 29 U.S.C. § 207(a); 29 C.F.R. § 778.101. Plaintiff claims that she and other Chambers gate guards/attendants were all misclassified as independent contractors when they should have been treated as employees, that they regularly worked more than 40 hours per week without being paid overtime pay, and that they should have been paid overtime for their work for Chambers. Plaintiff asserts that she and the other workers are similarly situated because there are common issues they all share that make this case appropriate for collective treatment.

## II. *SWALES* APPROACH TO NOTICE AND QUESTION PRESENTED

5. The Fifth Circuit in *Swales* stated that the "trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions." *Swales,* 2021 WL 98229, at 6. The Court further stated that the district court should determine whether "merits questions can be answered collectively" to determine "whether notice is necessary." *Swales,* 2021 WL 98229, at 18. In *Swales*, a case that also addressed an employee/independent contractor determination, the Fifth Circuit stated that the district court needs to "determine whether the economic-realities test could be applied on a collective basis." *Swales,* 2021 WL 98229, at 19.

6. The information and discovery responses provided by Chambers confirm that Torres and the other gate attendants are similarly situated: these individuals all worked more than 40 hours per week and did not get paid time-and-a-half for hours they worked over 40.

7. The determination of whether Torres and her co-workers were employees or independent contractors will be decided using the "economic realities test" as set out in numerous 5th Circuit cases, including *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008):

   (1)   the degree of control exercised by the alleged employer;
   (2)   the extent of the relative investments of the workers and the alleged employer;
   (3)   the degree to which the worker's opportunity for profit or loss is determined by the alleged employer;
   (4)   the skill and initiative required in performing the job; and
   (5)   the permanency of the relationship.

8. As dictated by the Fifth Circuit in *Swales*, the Court must consider whether a group of gate guards/attendants who perform the same duties, are all paid on an hourly basis, work solely for Chambers at the premises of Chambers clients, are provided by Chambers with uniforms and other items necessary for carrying out their duties, work more that 40 hours per week, and who are not paid overtime, are similarly situated under the economic realities test. The answer to these

questions is: Yes. Notice should be given as quickly as possible because the economic-realities test can be applied on a collective basis.

### III. FACTUAL BACKGROUND

**A. Defendant's Hourly Gate Guards/Attendants Are Similarly Situated to Plaintiff With Respect to Job Duties and Pay Provisions, and the Economic Realities Test.**

9. The sworn testimony of Plaintiff and two co-workers proves that a group of similarly situated workers shared common job duties and were subjected to the same illegal pay practices. Torres, David Avila ("Avila"), and Steve Pozo ("Pozo") (collectively "Plaintiffs") worked as hourly gate guards or gate attendants for Defendant Chambers Protective Services, Inc. Plaintiffs all performed substantially similar tasks under the same pay provisions. Plaintiffs all performed substantially similar tasks and were paid the same way, on an hourly basis.

10. The evidence provides the Court with many examples of similarities of tasks:

- Plaintiffs were all hired by Chambers to work as gate guards or gate attendants. Appx. p. 3, 13, 14, 29.

- Plaintiffs were all sent by Chambers to work as gate guards in several different states. Appx. p. 3, 14, 29, 30.

- Their duties consisted of patrolling fences, checking locks, and controlling access to fenced energy-related sites such as wind and solar farms. Appx. p. 4, 14, 29, 30.

- Plaintiffs generally worked shifts of at least 12 hours, often 7 days per week. Appx. p. 3, 13, 29.

- Plaintiffs received instructions regarding their job from Amber Arriaga, who works for Chambers. Appx. p. 4, 14, 30.

- Plaintiffs were all charged with interviewing and hiring other gate guards/attendants for Chambers. Appx. p. 4, 14, 30.

- Amber Arriaga at Chambers would send the names and phone numbers of applicants to the Plaintiffs for them to interview the individuals. Appx. p. 14, 30, 34-37.
- While required to interview gate attendants, Plaintiffs did not actually hire and/or pay new workers; Plaintiffs did not have anyone working "for" them. Appx. p. 4, 14, 15, 30.

11.   The evidence provides the Court with many examples of similarities of pay:

- Plaintiffs were all hired to work on an hourly basis.  Appx. p. 3, 13, 29.
- Plaintiffs kept track of their time and reported it each month to Amber Arriaga at Chambers, Appx. p. 3,4, 6-11, 13, 14, 16-27, 29, 32, 33. These time reports confirm that Plaintiffs, as well as the co-workers whose time was reported, all worked long shifts of 12 or more hours, often 7 days per week.
- Plaintiffs were paid for their hourly work by Chambers, generally by electronic means such as CashApp or PayPal. Appx. p. 4, 14, 30.
- Plaintiffs all worked more than 40 hours per week for Chambers and were not paid overtime pay for the hours they worked over 40 in a workweek. Appx. p.4, 5, 13, 15, 29, 31.
- Plaintiffs were all told by Chambers that Chambers considered them to be independent contractors, and Chambers did not withhold any taxes or make Social Security or Medicare payments. Appx. p. 4, 14, 30.

12.   Chambers paid expenses that are not generally paid for independent contractors:

- Plaintiffs were provided with uniform shirts with the Chambers name on them. Appx. p. 4,13, 14, 30.
- Chambers paid for the Plaintiffs' hotel rooms or other lodging while they were working. Appx. p.4, 15, 30.

- Plaintiffs were issues Chambers company credit cards to pay for lodging and vehicle expenses. Appx. p. 4, 15, 30, 31.
- Avila and Pozo were given Chambers company vehicles to drive on the job. Appx. p. 15, 30.

13. Chambers admits that it treated Plaintiffs and other gate guards in the same way.

- Chambers' interrogatory answers make clear that the individuals in question, those that Chambers paid to perform gate attendant duties, were treated in the same way: "The contractors decide which locations they wish to perform their gate attendant/coordinator services…" There is no indication in Chambers' answers to interrogatories that there is are any different categories of individuals at issue; rather, the answers confirm that their situation is very homogeneous. (Appx. p. 42).
- Chambers states in in its answer to Interrogatory no. 8 that there are no written contracts with any of the individuals in question, so there will be no contractual interpretation issues or differing terms that would cause the individuals in question to be dissimilarly situated. (Appx. p. 43).
- The answers to interrogatories confirm that the duties of the gate guards required no special skills, so there will be no need for any individualized analysis: "All that is required of gate attendants/coordinators is the basic need to read and write." (Appx. p. 43).
- Chambers' own documents show that Plaintiffs and the other gate guards were all paid in the same way (Appx. p. 45-100). Chambers documented that it made electronic monetary transfers were made to these individuals by Chambers on a regular basis, and that the notation on the payments was generally "Contractors."

6

14. Chambers advertises online on sites like *jobsearcher.com* and *indeed.com* to hire gate guards. Appx. p. 102-120. These advertisements do not seek individuals to bid on contracts to perform work for Chambers' clients; rather, Chambers seeks individuals who will work on an hourly basis to work as gate guards. These ads state that the gate guards will be expected to work 12-hour shifts, like the Plaintiffs, and make statements like "A job for which all ages, including older job seekers, are encourages to apply; Open to applicants who do not have a college diploma; A job for which people with disabilities are encouraged to apply." Appx. p. 102, 103.

### B. A Group of Similarly Situated, Potential Plaintiffs Exists

15. Plaintiffs testify that they are aware of and observed the work habits and conditions of employment of their co-workers and discussed them as well. These other individuals were required to perform the same kinds of work and work the same kinds of hours. The three Plaintiffs describe similar experiences and their testimony is confirmed by the discovery responses and job advertisements placed by Chambers.

### III. REQUEST FOR § 216 (b) NOTICE TO POTENTIAL PLAINTIFF

**A.   Legal Standard: The District Court Is Authorized To Issue Notice To The Similarly Situated Workers And Should Do So Immediately**

16. The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). According to the Supreme Court: 'Congress has stated its policy that [ADEA] plaintiffs should have the ability to proceed collectively.…The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same [discriminatory] activity.' *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

17. The trial court's notice-giving role is pivotal to advancing the goals and fulfilling

the intent of collective actions. An employee cannot benefit from a collective action without "accurate and timely notice," as the Supreme Court put it in *Hoffmann-La Roche, Inc. v. Sperling*. See also: *Swales v. KLLM Transp. Servs., L.L.C.*, No. 19-60847, 2021 WL 98229, at *2 (5th Cir. Jan. 12, 2021). While the Supreme Court has institutionalized the Court's discretionary role in the notice process, it specifically did not delve into the details of the exercise of its discretion. Therefore, the Court must be guided by other precedent in determining how to exercise its discretion as to whether notice to other workers should proceed. *See Hoffman-La Roche, Inc.*, 493 U.S. at 169. Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Hoffman-La Roche*, 493 US. at 170-172.

    **B.**    **Notice to Potential Plaintiffs is Appropriate on the Facts Presented**

18.    In order to demonstrate that notice to potential Plaintiffs is warranted, a plaintiff must make a showing that there are aggrieved individuals who are similarly situated to the plaintiff in relevant respects given the claims asserted. 29 U.S.C. §216(b); *Swales* 2021 WL 98229, at 1; *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019).

19.    While there is little Fifth Circuit guidance on the definition of the term 'similarly situated,' in the context presented, it has written on the issue. For example, in *Roussell v. Brinker International, Inc.,* the court affirmed the collective treatment of a group of individuals victimized by a tip-pool violation. There, the Fifth Circuit observed: "If one zooms in close enough on anything, differences will abound; ... [b]ut plaintiffs' claims need to be considered at a higher level

of abstraction." *Frank v. Gold'n Plump Poultry, Inc.,* No. 04–CV–1018, 2007 WL 2780504, at *4 (D.Minn.2007).

20. Prior decisions addressing the question of whether workers are "similarly situated" have ruled that to be similarly situated, each potential plaintiff's situation need not be identical, but merely similar. *Jones v. SuperMedia Inc.,* 281 F.R.D. at 288; see also *Tice v. AOC Senior Home Health Corp.,* 826 F.Supp.2d at 996 (citing *Allen v. McWane, Inc.,* No. 2:06–cv–158–TJ, 2006 WL 3246531, at *3 (E.D.Tex.2006)) ("[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices."); *Ryan v. Staff Care, Inc*., 497 F.Supp.2d at 825 ("The positions need not be identical, but similar.") (internal quotations omitted). See also *Tice v. AOC Senior Home Health Corp*., 826 F.Supp.2d at 996 (citing *Allen v. McWane, Inc*., 2006 WL 3246531, at *3) ("[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." citing *Lee v. Metrocare Servs*., 980 F. Supp. 2d 754, 766 (N.D.Tex.2013).

21. The fact that the workers seeking collective treatment in this case may have been called by different titles by the Defendants does not prevent certification. It is sufficient that "they were compensated under the same regimen" allegedly "infected by discrimination," even if "their duties may have differed." *Roberts v. S.B. S. Welding, L.L.C.,* 140 F. Supp. 3d 601, 607–08 (N.D.Tex.2015); See also: *Aguilar v. Complete Landsculpture, Inc*., No. 04–CV–0776, 2004 WL 2293842, at *4 (N.D. Tex.2004) (finding that foremen and laborers in landscape architecture business were similarly situated for the purpose of conditional certification under FLSA despite differences in pay and job responsibilities).

9

### C. Electronic Notice is Proper and Should Be Granted

22. Plaintiff requests permission from the Court to send the notices to the putative class members by regular mail, text message, and electronic mail. Plaintiffs testify that the workers in question travel around in their work and that electronic notice will help assure delivery of the notice and consent form. Appx. p. 5, 15, 31. Electronic notice has been approved by many courts. Additionally, Plaintiff requests permission to utilize electronic signatures on the consent forms. The Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001, provides that in all transactions in or affecting interstate or foreign commerce a contract or other record relating to the transaction shall not be denied legal effect merely because it is in electronic form. Other courts have approved the use of online, electronic signature opt-in forms.

### D. Relief Sought: Issuance of Notice to Potential Plaintiff and Disclosure of Names, Addresses, Cell Phone Numbers and Email Addresses

23. To facilitate the Notice process and protect and preserve the rights of those who have not yet opted in, Plaintiff has attached a proposed Notice and proposed Consent form to be approved by the Court. (See Exhibits 1 and 2). Plaintiff seeks to notify a group of potential Plaintiffs described as follows:

> "All individuals who worked as gate guards or gate attendants for Chambers Protective Services, Inc. or its clients/customers, and who were paid by Chambers Protective Services, Inc. for their work on an hourly basis between May 1, 2018 and now."

WHEREFORE, Plaintiff prays that the Court grant her Motion for Notice to Similarly Situated Workers and for such other and further relief to which they may be justly entitled.

Respectfully Submitted,

**THE BUENKER LAW FIRM**

*/s/ Josef F. Buenker*
Josef F. Buenker
TBA No. 03316860

jbuenker@buenkerlaw.com  
2060 North Loop West, Suite 215  
Houston, Texas 77018  
713-868-3388 Telephone  
713-683-9940 Facsimile  
**ATTORNEY-IN-CHARGE FOR**  
**PLAINTIFF MARISSA TORRES**

## CERTIFICATE OF SERVICE

     This is to certify that a true and correct copy of the foregoing is being served on counsel for Defendant via electronic filing on April 26, 2021.

/s/ <i>Josef F. Buenker</i>  
Josef F. Buenker