# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | | |
|---|---|---|
| MARISSA TORRES, Individually and On Behalf of All Similarly Situated Persons,<br>    Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 5:20-cv-0212 |
| CHAMBERS PROTECTIVE SERVICES, INC., JOHN CHAMBERS, CHRISTINA CHAMBERS, JAMES CHAMBERS, AMBER CHAMBERS ARRIAGA, and ALLEN CHAMBERS,<br>    Defendants. | § | JURY DEMANDED |

## REPLY BRIEF IN SUPPORT OF MOTION TO
## AUTHORIZE NOTICE TO SIMILARLY SITUATED WORKERS

Plaintiff Marissa Torres ("Torres"), submits this Reply Brief in Support of her Motion to Authorize Notice to Similarly Situated Workers (the "Motion"):

**Even if Taken as True, Defendants' Evidence Does Not Support Denial of Notice**

1. In Amber Arriaga's declaration (Def. App.), she claims that Torres is not similarly situated to other gate attendants because she was a supervisor. As made clear in her Motion and discussed in more detail below, Torres disputes most of Arriaga's assertions regarding Torres's independent contractor status. However, Torres clearly states in her declaration (Pl. App. 3, para. 2) that, when she first started working for Chambers, she worked as a gate attendant for a period of time until she was designated as a supervisor. Setting aside for a moment the declarations and other evidence from Torres that supervisors at Chambers perform the same duties and are paid in the same way as gate attendants, the fact that Torres worked as a gate attendant for Chambers makes her similarly situated to gate attendants and, to the extent that there is any difference, to supervisors as well.

1

2. To further specify the group of people to whom Torres seeks to send notice (more particularly identified below), Torres makes clear to the Court that she is only seeking to send notice to individuals who performed gate attendant/supervisor services and who were paid directly by one of the Defendants or their agents.

**Notice is Proper Because Plaintiff Has Provided
Evidence MeetingThe Court's Factual Considerations**

3. As mandated by the 5th Circuit in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), this Court identified the legal issues and the factual considerations that are material to consideration of the question of whether Plaintiff is similarly situated to other workers who performed gate attendant services for Chambers customers [Docket No. 25]. The evidence related to the Court's material factual considerations include:

| Factual Considerations Identified by Court | Description | Ref. |
|---|---|---|
| "The job descriptions and tasks of the putative class members – including the advertised and actual duties, responsibility, and authority of the potential class members" | Plaintiffs' declarations and Arriaga's declaration demonstrate that the job duties of gate guards are to control access to a facility and check fences. | Pl. App. p. 4, 14, 29, 30, 122, 135; Def. App. P. 2 |
| | Advertisements placed online confirm that the description in the ads match with the plaintiffs' job descriptions. | PL. App. p. 102-120 |
| "The terms of employment of the putative class members – including whether they had employment contracts or other written or unwritten employment terms, and the method, rate, and frequency of pay" | Plaintiffs and their co-workers usually worked 12-hour shifts | |
| | Plaintiffs' declarations confirm the shifts worked. | Pl. App. p. 3, 13, 29, 122, 135 |
| | Time records submitted to Chambers confirm the shifts worked. | Pl. App. p. 3,4, 6-11, |

|  |  |  |
|---|---|---|
|  |  | 13, 14, 16-27, 29, 32, 33, 124-126, 137-139 |
|  | Plaintiffs were paid on an hourly basis | Pl. App. p. 3, 13, 29, 122, 135 |
|  | Plaintiffs were paid as independent contractors, with no taxes deducted from their pay. | Pl. App. p. 4, 14, 30, 123, 136, 43. |
|  | Chambers did not have contracts with gate attendants or supervisors | Pl. App. p. 43. |
| "The hours that the putative class members worked – including the types of shifts and amount of hours per week that they worked" | Plaintiffs' declarations confirm that they all worked 12-hour shifts, often 7 days per week | Pl. App. p. 3, 13, 29, 122, 135 |
|  | Time records submitted confirm 12-hour shifts. | Pl. App. p. 3,4, 6-11, 13, 14, 16-27, 29, 32, 33, 124-126, 137-139 |
| "Any other facts supporting similarity of the putative class members for the purpose of applying the economic-realities test" | Chambers paid for lodging for Plaintiffs. | Pl. App. p. 4, 15, 30. |
|  | Chambers paid Plaintiffs directly by electronic means or transfer. | Pl. App. p. 4, 14, 30, 45-100, 123, 127-133. |
|  | Plaintiffs' hours were reported to Amber Arriaga at Chambers. | Pl. App. p. 3, 4, 13, 14, 29, 123, 135 |
|  | Plaintiffs were not required to make any personal investment in order to perform their jobs. | 4, 14, 30, 123, 136, |
|  | The work the gate attendants did does not require any specialized training or skill. | Pl. App. P. 4, 14, 29, 30, 43, |

3

|  |  | 122, 135; Def. App. P. 2 |
|---|---|---|

4. As set out in Plaintiff's Motion, the evaluation of Plaintiff and putative class members' employment status with Chambers will be under the economic realities test:

(1) the degree of control exercised by the alleged employer;
(2) the extent of the relative investments of the workers and the alleged employer;
(3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer;
(4) the skill and initiative required in performing the job; and
(5) the permanency of the relationship.

*Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

(1) The question of Chambers' control over the gate attendants is a question that will be common to all putative class members, gate attendants and supervisor.

(2) The question of whether and to what extent the hourly gate guards had any "investment" in the business is common to all putative class members.

(3) The question of whether hourly gate attendants and supervisors had any opportunity for profit or loss is common to all putative class members.

(4) Arriaga stated in her declaration that there is no skill or initiative required to work as a gate attendant ("The primary responsibility of a gate attendant is to monitor who enters and exits a job site.") (Def. App. 5, Decl. p. 2). The question will be common to all putative class members.

(5) Ms. Torres worked for the Defendant for several years. Some gate attendants worked for shorter periods of time. This question, the availability and permanence of work, is a question common to all putative class members.

## Arriaga's Declaration is Contrary to the Evidence

5. The Defendants' response to the Motion is supported solely by the declaration of Amber Arriaga, one of the Defendants (Def. App.). Ms. Arriaga makes numerous statements in her declaration that are directly contradicted in her own declaration and by the documents produced by both the Defendants and the Plaintiff:

| Arriaga Declaration | Decl. Pg. | Contrary Evidence | Reference |
|---|---|---|---|
| Chambers offers "projects" to supervisors who then bid on the projects and hire their own workers. | 2 | Defendant's answer to interrogatory no. 8: "The individuals (*interrogatory asks about hourly workers*) are independent contractors. There are no written contracts" | Pl. App. 43 |
| Chambers bids on projects on an hourly basis for the gate attendants. | 2 | Supervisors bid on projects and then determine how many gate attendants they require. | Arriaga Decl. p. 3, Def. App. 6 |
| "Over the past three years, Chambers has awarded projects to 8 supervisors" | 2 | According to its own records, Chambers paid at least 34 individuals for gate attendant services during that time period. | Pl. App. 45-100 |
| "Chambers did not have agreements with gate attendants." | 3 | According to its own records, Chambers paid at least 34 individuals for gate attendant services during that time period. | Pl. App. 45-100 |
| "In addition to the agreed upon hourly amount, Chambers would provide a supervisor a housing per diem for a project with the supervisor could you [sic] however he or she saw fit." | 3 | Supervisors bid on projects and then determine how many gate attendants they require. | Arriaga Decl. p. 3, Def. App. 6 |
| "The supervisors determined the number of gate attendants they needed for a project and hired and paid those individuals. | 3 | According to its own records, Chambers paid at least 34 individuals for gate attendant services during that time period. | Pl. App. 45-100 |
| "Chambers also maintained a list of the gate attendants who were working on a project and would, **on occasion**, pay a gate attendant if they had not | 3-4 | According to its own records, Chambers paid at least 34 individuals on multiple occasions for gate attendant services during that time period. | Pl. App. 45-100 |

5

| been paid by a supervisor." (emphasis added) | | | |
|---|---|---|---|

**The Plaintiff is Similarly Situated to all of Chambers' Gate Guards and Supervisors**

6. Defendants' Response and Arriaga's declaration do not provide sufficient evidence or legal argument to justify denying notice. Torres, Pozo, Cleveland, and Patel all began their work for Chambers as gate attendants before becoming supervisors. While the plaintiffs assert that they were paid on an hourly basis by Chambers and performed the same gate attendant duties during their entire tenure, that is a question that can be answered at a later date. Although Torres asserts that she was similarly situated to all gate attendants with regard to the terms and conditions of her work the entire time she worked for Chambers, at the very least, Torres's declaration establishes that, for a period of time, she worked for Chambers as a gate attendant and not a supervisor. This fact alone eliminates the sole objection to notice raised by the Defendants: that because she was a supervisor, Ms. Torres cannot be similarly situated to other gate attendants.

7. Arriaga's and plaintiffs' assertions regarding plaintiffs' job duties, responsibilities, and terms and conditions of employment of Chambers supervisors are diametrically opposed, but these are common issues that can be addressed by the Court during the course of this litigation.

**Plaintiff's Additional Evidence**

8. In her Motion, Torres identified how the individuals who worked as gate attendants for Chambers are similarly situated in terms of the inquiries the Court needs to make. Torres hereby submits two additional declarations, from Darquinton Cleveland and Yamine Patel, along with documents that they have from their time working for Chambers. These declarations and documents confirm that:

- Cleveland worked as a gate attendant for Chambers, was paid by Chambers, and worked 12-hour shifts (Pl. App. 122, para. 2). Cleveland was then made a supervisor, and his hours remained the same and he was paid in the same way, on an hourly basis (Pl. App. 122, para. 3). Mr. Cleveland's records show that he was paid directly by Chambers both during his tenure as a gate attendant (Pl. App. 129-133) and during his later stint as a supervisor (Pl. App. 127,128). Cleveland asserts that he was paid by Chambers the entire time he worked for Chambers (Pl. App. 123, para. 4-7).
- Patel worked as a gate attendant for Chambers, was paid by Chambers, and worked 12-hour shifts (Pl. App. 135, para. 1). Patel reported her hours to Chambers (Pl. App. 135, para. 2) and was paid by Amber Arriaga who transferred her pay directly into her Wells Fargo account (Pl. App 136, para. 4).

### Issuance of Notice

9. Defendants did not object to the form of Plaintiff's proposed Notice and proposed Consent form.

10. Plaintiff has modified her previous request for notice to be very clear that she is not asking the Court to ask that notice be sent to any gate attendant who was not paid by Chambers; that is, Plaintiff is asking for notice to be authorized **only** to gate attendants to whom any of the Defendants have sent payment directly. Plaintiff seeks to notify a group of potential plaintiffs described as follows:

> **"All individuals who worked as gate guards or gate attendants for Chambers Protective Services, Inc. or its clients/customers and who were paid directly by Chambers Protective Services, Inc., Amber Arriaga, John Chambers, Christina Chambers, James Chambers, Michael Arriaga, or Allen Chambers at any time between June 1, 2018 and now."**

WHEREFORE, Plaintiff Marissa Torres prays that the Court grant her Motion for Notice to Similarly Situated Workers and for such other and further relief to which she may be justly entitled.

Respectfully Submitted,

**THE BUENKER LAW FIRM**

*/s/ Josef F. Buenker*
Josef F. Buenker
TBA No. 03316860
jbuenker@buenkerlaw.com
2060 North Loop West, Suite 215
Houston, Texas 77018
713-868-3388 Telephone
713-683-9940 Facsimile
**ATTORNEY-IN-CHARGE FOR
PLAINTIFF MARISSA TORRES**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing is being served on counsel for Defendant via electronic filing on May 27, 2021.

*/s/ Josef F. Buenker*
Josef F. Buenker